**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Bao LU, Defendant—Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Thy Chann, Defendant—Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Son Van Nguyen, Defendant—**
**Appellant.**

**Nos. 03–10481, 04–10219, 04–10233.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 2006.

Decided April 5, 2006.

William Sze Wong, Patrick Hanly, Esq., Office of the U.S. Attorney, Sacramento, CA, for Plaintiff–Appellee.

Michael B. Bigelow, Esq., James R.Greiner, Esq., Sacramento, CA, Lindsay Anne Weston, Esq., Davis, CA, for Defendant–Appellant.

Before: REINHARDT, NOONAN, and HAWKINS, Circuit Judges.

MEMORANDUM *

In these consolidated appeals, three defendants, Son Van Nguyen, Bao Lu and

* This disposition is not appropriate for publication and may not be cited to or by the courts

Thy Chann,[1] appeal their convictions following a twenty-day jury trial for conspiracy to commit a Hobbs Act robbery, use of a firearm in connection with a crime of violence, and aiding and abetting a death caused by such use of a firearm. 18 U.S.C. §§ 2, 1951(a), 924(c)(1) and 924(j). We affirm their convictions and remand their sentences pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir.2005) (en banc).

## I. *As to All Three Defendants:*

### A. Constructive Amendment of Indictment

■ The government did not constructively amend the indictment by introducing evidence that the Phnom Pich Jewelry Store was involved in the interstate purchase of diamonds, as opposed to gold. The indictment stated that Phnom Pich "was engaged in the sale of jewelry and other products in foreign and interstate commerce" and that the store "was in an industry which affects interstate commerce." This broad language did not limit the government to introducing evidence only about gold.

### B. Hobbs Act—Sufficiency of Evidence

■ The district court did not err by denying the defendants' motion for acquittal because the government proved a de minimis nexus to interstate commerce to support the Hobbs Act charge. Although the government may not have demonstrated that Phnom Pich *directly* purchased gold, diamonds, or other items from out-of-state, it did prove that the business's inventory *at some point* originated from out-

side the state, and this indirect effect is sufficient for Hobbs Act jurisdiction. *See, e.g., United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir.2004) (robbery of cocaine traffickers would affect foreign commerce because "all cocaine originates overseas"); *see also United States v. Elias*, 285 F.3d 183, 189 (2d Cir.2002); *United States v. Zeigler*, 19 F.3d 486 (10th Cir.1994); *United States v. Brown*, 959 F.2d 63, 68 (6th Cir.1992); *United States v. DeMet*, 486 F.2d 816, 821–22 (7th Cir.1973).

### C. Other Crimes Evidence

■ The district court did not abuse its discretion by admitting evidence regarding the PKI robbery pursuant to Fed.R.Evid. 404(b). This similar crime occurred only two weeks after the charged crime, involved all of the same participants and a strikingly similar modus operandi. The minor differences between the crimes were not significant, and the subsequent act was relevant to prove identity, plan and association. The probative value of the evidence also outweighed any risk of unfair prejudice, and the district court gave a proper limiting instruction.

### D. Instructional Error

#### 1. Hobbs Act Instruction

Defendants argue that the district court improperly instructed the jury on the elements of Hobbs Act robbery because the instruction did not require finding a specific intent to steal, that is, to permanently deprive the owner of his property. The circuits are currently split as to whether the Hobbs Act requires specific intent to steal. *Compare United States v. Thomas*,

of this circuit except as provided by 9th Cir. R. 36–3.

1. This court has received Appellant Chann's March 17, 2006 handwritten letter reiterating his request to waive his appeal. Because

Chann is still represented by counsel, however, any such request would have to come from his attorney of record. We will, therefore, proceed to decide his case on the merits.

8 F.3d 1552, 1562–63 (11th Cir.1993), *with United States v. Nedley,* 255 F.2d 350, 355 (3d Cir.1958).

■ However, assuming without deciding that the defendants are correct that Hobbs Act robbery requires a specific intent to steal, any error in the instruction was harmless. *See United States v. Gracidas–Ulibarry,* 231 F.3d 1188, 1191, 1197 (9th Cir.2000) (en banc) (failure to instruct may be harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error). Under the definition given by the court, the jury was required to find that the defendants conspired to take the victim's property, against his will, by means of force or fear of injury.[2] Although the defendants suggest they could have invaded the victims' home to inflict gratuitous violence without intending to steal from the owners, there is no evidence to support this proposition, and the suggestion seems entirely implausible in light of the co-conspirators' testimony regarding the intentions of the group. *See United States v. Capati,* 980 F.Supp. 1114, 1130 (S.D.Cal.1997) (holding similar Hobbs Act instructional error harmless).[3]

### 2. Aiding and Abetting

■ The district court did not err in instructing the jury on aiding and abetting. Unlike *United States v. Bancalari,* 110 F.3d 1425, 1429–30 (9th Cir.1997), in which the instruction permitted conviction if the defendant simply *knew* his accomplice was carrying a firearm, the instructions given by the district court in this case required the jury to find the defendants had "knowingly and intentionally aided, abetted, counseled, commanded, induced or procured" the accomplice to commit the charged crime. This language comports with the requirements of *Bancalari. See id.* at 1429 ("[I]n order to be convicted of aiding and abetting his accomplice's § 924(c) violation, [defendant] must have knowingly and intentionally aided and abetted the use or carrying of the firearm."); *id.* at 1430 ("[T]he jury was not required to find an essential element of the crime—that [defendant] knowingly and intentionally aided and abetted the principal's use of the firearm.").

### E. Hobbs Act/Felony Murder

■ Defendants also argue that Hobbs Act robbery cannot be a predicate crime for felony murder under Section 1111 because neither conspiracy nor "Hobbs Act robbery" is specifically listed in that provision. 18 U.S.C. § 1111. However, the government need not *charge* the defendants with the commission of the underlying felony, but must prove that such a felony was committed. *See United States v. Chischilly,* 30 F.3d 1144, 1159 (9th Cir. 1994) (Section 1111 requires the *commission* of an enumerated felony with the requisite mens rea for the underlying offense) (emphasis added); *United States v.*

---

**2.** The district court gave a robbery instruction that was based on the statutory language of the Hobbs Act, and required the jury to find: the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
*See* 18 U.S.C. § 1951(b).

**3.** Nguyen also alleges instructional error under the Hobbs Act because the jury was not required to find he stole from a person. However, the instruction as given did require the jury to find the taking or obtaining of personal property "from the person or in the presence of another, against his will."

*Bracy,* 67 F.3d 1421 (9th Cir.1995) (defendant need not be charged with underlying predicate felony to be convicted of violating 18 U.S.C. § 924(c) carrying charge). The instructions in this case required the jury to find that the defendant "intended to commit the robbery or attempted robbery" (which *are* enumerated offenses under Section 1111) and that a killing occurred in the course of that crime.

■ In *United States v. Lilly,* 512 F.2d 1259, 1261 (9th Cir.1975), this court held that "robbery" under Section 1111 includes the element of specific intent to steal, just as it did at common law. The only robbery instruction given in this case was the Hobbs Act statutory definition of robbery, which did not specifically include this element. However, as discussed above, any error in omitting this element was harmless, as it is clear beyond a reasonable doubt that a rational jury would have also found intent to steal given the evidence presented in this case and the facts the jury necessarily found in order to convict the defendants as instructed. *See Gracidas–Ulibarry,* 231 F.3d at 1197–98.

### F. Sentencing

■ At the time of sentencing, before *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court believed the sentencing guidelines were mandatory. We therefore remand the sentences to the district court for the limited purpose set forth in *United States v. Ameline,* 409 F.3d 1073 (9th Cir. 2005) (en banc).

### II. *As to Defendants Lu and Nguyen:*

### Shackling

■ The district court did not abuse its discretion by requiring defendants to be shackled to a ninety-pound cement bucket during trial. The district court was concerned about security based on the violent nature of the defendants and their extensive criminal histories, and also explored the possibility of less restrictive alternatives before deciding to shackle the defendants. *See United States v. Baker,* 10 F.3d 1374, 1401 (9th Cir.1993). Moreover, because a skirt was placed around the table, the jury could not see the shackles, and the defendants therefore cannot demonstrate any alleged error prejudiced them. *See, e.g., Rhoden v. Rowland,* 172 F.3d 633, 635 (9th Cir.1999).

### III. *As to Defendant Lu Only:*

### A. Juvenile Justice and Delinquency Prevention Act ("JDA")

■ The district court did not clearly err by finding that the government did not act in bad faith by initially indicting defendant Bao Lu as an adult under the name Hoang Nguyen. The district court recognized that although some information possessed by the government may have suggested that Nguyen (Lu) operated under an alias with a possibly younger birth date, the government also had lots of conflicting (and more convincing) information—including information supplied by the defendant himself—that his name was Hoang Nguyen and that he was over twenty-one.

■ Bao Lu did not officially inform the district court of his true age and name until he was already twenty-one. The district court then properly dismissed the original indictment. Although Lu argued the dismissal should be with prejudice, in light of the court's finding that the government had not acted in bad faith with respect to the initial indictment, the district court did not abuse its discretion by ordering the indictment dismissed without prejudice. *See United States v. Garza–Juarez,* 992 F.2d 896, 905 (9th Cir.1993) (whether to dismiss indictment to remedy a violation is an exercise of court's supervisory pow-

ers and reviewed for abuse of discretion). When the government then filed a new indictment under Bao Lu's true name, he was over twenty-one and ineligible for proceedings under the JDA. *See United States v. Araiza–Valdez,* 713 F.2d 430, 433 (9th Cir.1980).

Lu argues that the government should not be allowed to circumvent the JDA in this way. However, as the district court found, the government did not act intentionally to deprive Lu of the benefits of the JDA, and, indeed, if Lu had informed the court of his true name and age earlier, the government would have been required to follow the procedures set forth therein. *See United States v. Frasquillo–Zomosa,* 626 F.2d 99, 102 (9th Cir.1980) ("The age of the accused ... is a fact which at times may be peculiarly within the knowledge of the accused and sometimes, perhaps often, not susceptible to independent proof. Especially is this so where the accused is an alien.")

■ For the same reason, we are unpersuaded by Lu's argument that he has been prejudiced because of pre-indictment delay. Lu cannot demonstrate that the government sought a tactical advantage in delaying the indictment, because the government actually *did* file the indictment while he was still a juvenile (just under the wrong name and birth date). If the government had intentionally sought to deprive Lu of the protections of the JDA, as Lu claims, it could have waited an additional nine months to file the indictment. Likewise, Lu cannot demonstrate actual prejudice from any pre-indictment delay. He argues that if he had been indicted sooner "counsel would have insisted he be proceeded against under the [JDA];" however, nothing prevented Lu from seeking the protections of the JDA in the nine months following the improper indictment. *See United States v. Sherlock,* 865 F.2d

1069, 1073 (9th Cir.1989) (indictment should be dismissed for pre-indictment delay only if defendant demonstrates a deliberate act by the government and actual prejudice).

**B. Speedy Trial**

■ Lu was not denied the right to a speedy trial under the Speedy Trial Act. In addition to the delays that Lu personally acquiesced to and pending motions filed by Lu, the remaining delays were excludable as to Lu's codefendants, and thus excludable to him under 18 U.S.C. § 3161(h)(7). These delays were "reasonable" because of the complexity of the case, the severity of the charges, the number of defendants, and the important interest in preserving a joint trial. *See United States v. Hall,* 181 F.3d 1057, 1062 (9th Cir.1999).

■ Nor did the delay in his trial violate the Sixth Amendment. *See United States v. Baker,* 63 F.3d 1478, 1497 (9th Cir.1995) (presumption that compliance with Speedy Trial Act also complies with Sixth Amendment). In analyzing a claim under the Sixth Amendment, we consider the following factors: (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice from the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Although Lu was vocal in expressing his right to trial, and there was a significant delay between the indictment and trial, there was a much shorter delay between the time Lu indicated he was ready for trial and the trial's commencement. Moreover, Lu has not demonstrated what prejudice he suffered from the delay, and, as noted above, there were numerous legitimate reasons for the delay.

## IV. *As to Defendant Nguyen Only:*

### A. Denial of Severance Motion

 Joinder in this case was clearly proper under Fed.R.Crim.P. 8(b), because all three defendants were charged with participating in all three counts brought to trial, and all the counts arose out of the Stockton incident. *See United States v. Sanchez–Lopez,* 879 F.2d 541, 550 (9th Cir. 1989). The district court did not abuse its discretion by denying Nguyen's motion for severance pursuant to Fed.R.Crim.P. 14, because Nguyen has not demonstrated how he was prejudiced from the joinder of counts or defendants. *See United States v. Baker,* 10 F.3d 1374, 1387 (9th Cir.1993).

### B. Motion to Suppress Wiretap Evidence

 Defendant Nguyen argues that the district court erred by denying co-defendant Hoang Ai Le's motion to suppress wiretap evidence. However, Nguyen failed to join Le's motion in district court and has therefore waived this issue. *See United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.2000).

### C. Response to Jury Question

 The district court did not plainly err in answering the jury's question regarding Nguyen's presence when the murder occurred.[4] After discussing the answer with counsel, the court gave an instruction that was agreed to by both the government and Nguyen's counsel, and, more importantly, a correct statement of the law. *See Shockley v. United States,* 166 F.2d 704, 715 n. 6 (9th Cir.1948). The court's response did not "remove" Nguyen's alibi instruction, but specifically referred the jury back to all its prior in-

structions, as requested by defense counsel.

**CONVICTIONS AFFIRMED; SENTENCES REMANDED.**

---

4. Because Nguyen's counsel did not object to the district court's proposed response, we re-

view for plain error. *United States v. Stapleton,* 293 F.3d 1111, 1118 n. 3 (9th Cir.2002).